IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM WELLS, JOHN PETRUSEK, )
PASQUAL ORTIZ )
)
      Plaintiffs, )
)
v. ) No. 09 C 1728
)
)
EDISON INTERNATIONAL, INC., )
EDISON MISSION GROUP, INC., )
EDISON MISSION ENERGY, )
)
      Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

    This matter is before the court on Defendant Edison International, Inc.'s (Edison International), Defendant Edison Mission Group, Inc.'s (EMG), and Defendant Edison Mission Energy's (EME) motion to dismiss. For the reasons stated below, we grant Defendants' motion to dismiss.

## BACKGROUND

Plaintiffs allege that they were tradesmen who worked at a generating station (Facility) owned and operated by Midwest Generation LLC (Midwest). Plaintiffs allege that the Facility was under the actual control and management of Defendants. According to Plaintiffs, on September 12, 2006, there was an explosion at the Facility which caused serious and permanent injuries to Plaintiffs. Plaintiffs allege that the explosion was a result of negligent acts by agents of Defendants.

Plaintiffs brought the instant action in the Circuit Court of Cook County asserting Illinois common law claims for negligence. EMG removed the instant action to this court and all Defendants have moved to dismiss the instant action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) directs a court to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Although a plaintiff need not anticipate in its complaint a personal jurisdiction challenge, "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781-82 (7th Cir. 2003); *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008)(stating that "[t]he plaintiff bears the burden of proving that the jurisdictional requirements are met, but if no facts are in dispute, as is the case here, then the party asserting jurisdiction need only establish a *prima facie* case of personal

jurisdiction to satisfy that burden"); *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 875 (7th Cir. 2006)(indicating that the plaintiff bears the burden of establishing personal jurisdiction). If the district court holds an evidentiary hearing to address the personal jurisdiction issue, the "plaintiff must establish jurisdiction by a preponderance of the evidence." *Purdue Research Foundation*, 338 F.3d at 781-82. If the district court rules solely based on written materials submitted by the parties, "the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" *Id.* (quoting in part *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In determining whether a plaintiff has made a prima facie showing, "the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). In assessing whether a plaintiff has made a *prima facie* showing the court can consider materials presented to the court by the parties such as affidavits. *Id.*

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant can seek a dismissal of the claims brought against him based upon "insufficiency of process. . . ." Fed. R. Civ. P. 12(b)(5). Federal Rule of Civil Procedure 4(m) (Rule 4(m)) provides that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time. . . ." Fed. R. Civ. P. 4(m). Rule 4(m) also provides that "if the plaintiff shows

good cause for the failure" to serve within the 120 day deadline, "the court shall extend the time for service for an appropriate period." *Id.*

## DISCUSSION

Defendants argue that the claims brought against them should be dismissed since all three Defendants are not subject to personal jurisdiction in Illinois and since all three were not properly served within 120 days of the filing of the instant action.

I. Personal Jurisdiction

Defendants argue that they are not subject to personal jurisdiction in Illinois. In a federal court action premised solely on diversity subject matter jurisdiction, the court "has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 760 (7th Cir. 2008). To determine whether a defendant is subject to personal jurisdiction in Illinois, a court must consider the limitations imposed by "the Illinois long-arm statute, the Illinois constitution, and the federal constitution." *Id.* As indicated above, after a defendant has moved to dismiss a complaint "for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Foundation*, 338 F.3d at 782 (7th Cir. 2003).

A defendant may be subject to two types of personal jurisdiction: general jurisdiction and specific jurisdiction. A defendant is subject to general jurisdiction "where the defendant's contacts with the forum state are 'continuous and

4

systematic.'" *Citadel Group Ltd.*, 536 F.3d at 760 n.3 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). For general jurisdiction, "[u]nlike specific jurisdiction," a defendant can "be sued in the forum regardless of the subject matter of the litigation." *Purdue Research Foundation*, 338 F.3d at 787.

A defendant can be subject to specific jurisdiction in a state where a defendant has particular contacts with the state. *Citadel Group Ltd.*, 536 F.3d at 760 n.3. The Illinois long-arm statute provides a "catch-all" provision for personal jurisdiction "which permits a court to 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.'" *Id.* at 760 (quoting in part 735 Ill. Comp. Stat. 5/2-209(c)). The Illinois and federal constitutional limitations are generally synonymous. *Id.* Under the federal due process limitations, a court lacks personal jurisdiction over a defendant "unless the defendant had 'certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting in part *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(quotations omitted)). A showing of minimum contacts can be made by establishing that the "out-of-state actor has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting in part *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). The contacts between the defendant and the forum "must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and

connection with the forum State' must be such that it should 'reasonably anticipate being haled into court there.'" *Id.* (quoting in part *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In the instant action, a determination as to general jurisdiction or specific jurisdiction turns on whether Defendants can be held liable for the conduct of Midwest. Both parties agree that Midwest is a corporate subsidiary of all three Defendants. Defendants have submitted a declaration from the CFO of Edison International (Declaration) indicating that Midwest is a corporate subsidiary that is three corporate levels removed from EME. (Mot. Ex. 1 Par. 4). The Declaration further states that EME is, in turn, a corporate subsidiary two corporate levels removed from EMG. (Mot. Ex. 1 Par. 4). Finally, the Declaration indicates that EMG is a corporate subsidiary directly owned by Edison International. (Mot. Ex. 1 Par. 6). Plaintiffs have not pointed to any evidence or information to suggest that the corporate structure described in the Declaration is inaccurate. Plaintiffs have, instead, pointed to certain publicly available documents that they argue establish that Midwest holds a closer relationship to Defendants than the corporate structure might suggest.

Outside of Plaintiffs' contentions about the connection between Defendants and Midwest, Plaintiffs have not pointed to contacts between Defendants and Illinois that would establish either general or specific jurisdiction. The uncontested record reflects that all three Defendants are incorporated outside of Illinois and maintain principal places of business outside of Illinois. (Mot. Ex. 1 Par. 5-7). The record

shows that all three Defendants maintain no offices in Illinois and do not own or lease property in Illinois. (Mot. Ex. 1 Par. 5-7). While Defendants concede that EME does have six employees who reside in Illinois, the Declaration states that these employees report to EME's principal offices in California. (Mot. Ex. 1 Par. 12). Thus, in the absence of a special legal connection between Defendants and Midwest, there is no indication of either "continuous and systematic" contacts between Defendants and Illinois or information that Defendants purposefully availed themselves of the benefits of Illinois law. *Citadel Group Ltd.*, 536 F.3d at 760. We note that Plaintiffs have not argued in opposition to the motion to dismiss that, outside of a connection to Midwest, any of Defendants have sufficient connections to Illinois to establish general or specific jurisdiction. Plaintiffs' sole argument is that Defendants can be legally held responsible for the conduct of Midwest and that the contacts of Midwest are sufficient to establish both specific and general jurisdiction.

As a general rule, "corporate ownership alone is not sufficient for personal jurisdiction." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). As the Seventh Circuit has held, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Id.* Thus, "where corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to

7

the other." *Id.* Holding otherwise would violate "a company's owners['] reasonabl[e] expect[ation] that they cannot be held liable for the faults of the company." *Id.*

Illinois courts likewise only "exercise jurisdiction over parents based on the activities of the subsidiary where the corporate veil can be pierced, or perhaps where all the corporate formalities are observed but the subsidiary's only purpose is to conduct the business of the parent." *Id.* at 940. In Illinois, "[p]iercing the corporate veil is not favored and in general, courts are reluctant to do so." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). To pierce the corporate veil "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *In re Wallen*, 633 N.E.2d 1350, 1357 (Ill. App. Ct. 1994). For the purposes of piercing the corporate veil, there must be "some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction." *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994).

Plaintiffs advance several arguments for why they believe that Defendants have sufficient connections as parent corporations of Midwest to be held liable for the acts of Midwest and to be subject to personal jurisdiction in Illinois by virtue of their affiliation with Midwest. First, Plaintiffs speculate that Defendants' contention

that EME, EMG, and Edison International are all multiple corporate levels removed from Midwest may be misleading. Plaintiffs point to the fact that the Declaration submitted by Defendants does not name the two corporations intervening on the chain between Midwest and EME. Plaintiffs also point to various public documents, including press releases by EMG, the Edison International website, and a job posting by Midwest, all of which suggest that Midwest is a corporate subsidiary of EME, but do not state that Midwest is an indirect corporate subsidiary multiple levels removed from EME. However, a determination that Midwest is a direct corporate subsidiary or an indirect corporate subsidiary of Defendants is not dispositive to the issue at hand. Even if Midwest was no more than one level below Defendants on the corporate chain, Plaintiffs would still have to show that Defendants, as parent corporations, exercised such a degree of control over Midwest that they can be held liable for the conduct of Midwest under Illinois and federal law. *Central States*, 230 F.3d at 940.

Plaintiffs also argue that they can make out a *prima facie* case for such a connection between Defendants and Midwest based on various public statements made by certain Defendants demonstrating a link between the respective companies. For example, Plaintiffs point out that the Edison International website and the Edison International annual report make mention of the activities of Midwest. Plaintiffs point to the fact that, according to certain press releases on the Edison International website, the president of Midwest also holds a position as a mid-level executive for EMG. Finally, Plaintiffs point to language in a different press release stating that

9

"Edison Mission Energy and its US based subsidiary Midwest Generation have established a joint 'environmental technologies review committee.'" (Ans. Ex. 2).

As we discussed above, Plaintiffs cannot rely on the fact that Midwest and Defendants have a subsidiary-parent relationship to show that there is personal jurisdiction. *Central States*, 230 F.3d at 940. In this case, Plaintiffs have not pointed to information that would indicate that Midwest was anything more than a corporate subsidiary of Defendants. For example, in assessing whether there is an extraordinary high degree of control over a subsidiary, Illinois courts look at factors such as:

> inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a shareholder; failure to maintain arm's length relationships among related entities; and whether the corporation is a mere facade for the operation of the dominant shareholders.

*Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996) (citations omitted). Plaintiffs have not addressed even one of the above factors, nor have they presented sufficient evidence to even raise a suggestion that Defendants exercise an unusually high degree of control over Midwest or that the court should pierce the corporate veil in this case. The majority of the documents relied upon by Plaintiffs refer to Midwest as a separately operated subsidiary and there is no information indicating that Midwest is an alter ego of any Defendant. Thus, the court finds that Plaintiffs have not made out a *prima facie* case showing

that Defendants are subject to personal jurisdiction. Therefore, no further discovery on the issue would be appropriate and the court grants Defendants' motion to dismiss for lack of personal jurisdiction.

II. Service of Process

In addition to Defendants' argument that the court should dismiss the action for lack of personal jurisdiction, Defendants move to dismiss the action contending that Plaintiffs have failed to properly serve any of the three Defendants. Defendants argue that, with respect to EME and Edison International, Plaintiffs served different entities and that EME and Edison International were never properly served. With respect to EMG, Defendants argue that the return of service filed by Plaintiffs indicates that EMG was served via personal service outside of Illinois and, since EMG has not submitted to the jurisdiction of the courts of Illinois, such service was not sufficient. The court notes that, although it has been more than 120 days since the action was originally filed in state court, the Seventh Circuit has held that "[n]o federal interest in a case arises until the date of removal, and there is no reason why federal procedural rules should be thought to apply until such an interest arises." *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119 (7th Cir. 2001). It has not been 120 days since the action was removed to federal court. However, based on the ruling above, the court need not reach the issue of service of process.

**CONCLUSION**

Therefore, based on the foregoing analysis, we grant Defendants' motion to dismiss and dismiss the instant action for lack of personal jurisdiction.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 1, 2009